FILED

2020 May-19  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

**KENNETH COX, ANTUWANE TATE,**
**WILLIAM WHITLEY, BRANDON MCCOLLINS,**
**and VALENTI ARMSTEAD,**
*individually and on*                              *
*behalf of all other similarly situated*,          *
                                                   *
      Plaintiffs,                              *
                                                   *
**v.**                                             *     Case No.: 5:19-CV-00577-LCB
                                                   *
**BIMBO BAKERIES USA INC** and                     *
**BIMBO FOODS BAKERIES**                           *
**DISTRIBUTION LLC**,                              *
                                                   *
      Defendants.                              *

---

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT

---

Following extensive litigation, a full-day mediation with an experienced third-party neutral, Michael E. Dickstein, and extensive, ongoing, negotiations, Named Plaintiffs Kenneth Cox, Antuwane Tate, William Whitley, Brandon McCollins, and Valenti Armstead ("Named Plaintiffs"), individually and on behalf of the Opt-In Plaintiffs who joined this lawsuit, and Defendants Bimbo Bakeries USA, Inc and Bimbo Foods Bakeries Distribution, LLC, ("Defendants") (collectively, the "Parties") reached a settlement in the above-captioned case.  Named Plaintiffs now

1

respectfully request, and Defendants do not oppose, that the Court approve their settlement of this Fair Labor Standards Act ("FLSA") collective action seeking alleged overtime compensation and dismiss this case with prejudice.  As detailed below, the Court should grant Plaintiffs' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' bona fide dispute as to liability and alleged damages under the FLSA.

## I.      Relevant Procedural and Factual History

Named Plaintiffs, individually and on behalf of others similarly situated ("Plaintiffs and Opt-In Plaintiffs" or collectively "Plaintiffs"), filed this case seeking damages for unpaid overtime wages due to their alleged misclassification as independent contractors by Defendants.  Plaintiffs alleged they were not paid overtime for hours worked over forty (40) in each workweek. Defendants denied, and continue to deny, Plaintiffs' claims and maintain that Plaintiffs are and were independent contractors not subject to the FLSA or otherwise exempt from the FLSA even if they were employees, as well as maintaining that collective adjudication of their claims is no appropriate.

More specifically, this litigation originated May 10, 2018 in the United States District Court for the Western District of Tennessee, Western Division, as *Tate et. al., v. Bimbo Bakeries USA Inc. et. al.*, Case No. 2:18-cv-02315-MSN-tmp (the "Tate

Case"). Defendants asserted counter-claims for unjust enrichment against Plaintiffs Tate and Whitley, which they answered.

The Parties engaged in pre-conditional certification discovery of Plaintiffs Tate, Whitley, McCollins and Armstead (the "Tate Named Plaintiffs"). Each named plaintiff was deposed and responded to written discovery, producing over 1,200 documents. Defendants also served limited third-party discovery.

On June 24, 2019 Judge Mark S. Norris granted Plaintiffs' conditional certification motion. Judge Norris conditionally certified a collective as follows: (1) anyone who worked as a distributor for Defendants; (2) classified as an independent contractor, who worked pursuant to Distribution or Franchise Agreements; (3) in Tennessee; (4) any time from May 10, 2015.

On April 15, 2019 Plaintiff Cox filed the instant action on behalf of himself and similarly situated individuals and alleged almost identical claims as the Tate Plaintiffs in the Tate Case. On July 19, 2019 the Parties reached a stipulation on conditional certification. (ECF No. 45). The Parties agreed to send notice of the pending action to putative collective members who "(i) have last known business addresses in any state other than Maine, New Hampshire, Vermont, Connecticut, Massachusetts, Rhode Island, New York, California and Arizona for one or more days from July 22, 2016 to the present; and (ii) within the remaining 41 states, did not sign Distribution or Franchise Agreements containing arbitration agreements

3

and/or class/collective action waivers." (*Id.*).  As part of the stipulation, the Parties agreed to mediate within ninety (90) days after the close of the Notice Period. (*Id.*). The Parties' dismissed the Tate Case, entered a limited tolling agreement, and amended the complaint in the present action to consolidate the two actions.

On September 6, 2019, Defendants filed their answer and asserted a counter-claim for unjust enrichment against Plaintiff Cox. On September 20, 2019 Defendants filed a Third-Party Complaint against KLC INC,[1] claiming breach of contract, unjust enrichment, and seeking indemnification should Plaintiff Cox be found to be an employee of Defendants. The Parties stipulated that all pending answers be postponed pending the result of mediation.

On April 7, 2020, the Parties participated in mediation with experienced collective action mediator Michael E. Dickstein.  The Parties were able to reach a resolution of the case at that time after close to 12 hours of negotiations.  Following mediation, the Parties engaged in further arm's-length negotiations of material terms and conditions of the settlement agreement and reached an agreement on the same.

Defendants deny the claims asserted in this case and make no admission whatsoever of liability or violation of the FLSA or any other statute.  Defendants nevertheless desire to settle the case on the terms set forth in the Settlement Agreement for the purpose of avoiding the burden, expense, and uncertainty of

---

[1] KLC INC is Plaintiff Cox's business.

continuing litigation, and for the purpose of putting to rest the controversies engendered by the litigation.

The Parties believe that the settlement reached in this matter represents a fair and reasonable compromise given the disputed matters at issue and the risks of continuing forward with litigation on the merits and on decertification.

## II.     Terms of the Proposed Settlement

### A.     Settlement Amount and Allocation

The Settlement Agreement provides that Defendants will pay up to the total gross sum of $703,000.00, which includes Plaintiffs' attorneys' fees and costs.  The details of the agreement are set forth in the executed Settlement Agreement, which is attached as *Exhibit A*.  From the gross settlement amount, the Named Plaintiffs and all Opt-Ins will receive overtime compensation based upon a percentage of weeks they worked for Defendants during the recovery period and whether they entered into an arbitration agreement and/or class/collective action waiver with Defendants, with no further deductions for fees or costs.

Plaintiffs' Counsel hereby moves that their fees and costs be approved by the Court.  Plaintiffs' Counsel spent significant time and resources litigating this matter through pleadings, discovery, and settlement negotiations.  Plaintiffs' Counsel will spend more hours finalizing this settlement. The amount requested by Plaintiffs'

Counsel includes all costs.  Plaintiffs' Counsel submits that the fee request represents a fraction of the time Plaintiffs' Counsel incurred in connection with litigating this matter.  Finally, Defendants have agreed to pay this amount as fees and costs and do not oppose Plaintiffs' Counsel's request.

**B.      Release of Claims**

In exchange for the settlement payments to be made under the Settlement Agreement, Plaintiffs have agreed to dismiss this litigation with prejudice.  Further, Plaintiffs, on behalf of each and all of their respective representatives, employees, agents, estates, heirs, successors and assigns, as well as any business entity in which each has or had any ownership interest and each and all of their past, present, and future directors, officers, insurers, and employees/contractors/helpers of such entity, agreed to waive, release and forever discharge Releasees (defined as Bimbo Bakeries USA, Inc.; Bimbo Foods Bakeries Distribution, Inc.; and Bimbo Foods Bakeries Distribution, LLC; and each and all of their past, present, and future parents, subsidiaries, members and affiliates and all of their insurers, predecessors, successors and assigns, directors, officers, agents, employees and/or attorneys, all both individually and in their official capacities) from any and all legally waivable claims, actions or causes of action, suits, claims, complaints, contracts, agreements, promises, liabilities, torts, debts, damages, controversies, judgments, rights and demands, whether existing or contingent, known or unknown, suspected or

unsuspected, arising prior to the approval date of the Settlement Agreement and arising under the FLSA or any other federal, state, or local law or common law or legal theory providing relief for a wage and hour (including retaliation), wage payment, or contract-related compensation claim, including those concerning breaks, wage statements, wage notices, and any penalties or other damages related to alleged misclassification as contractors, overtime, or minimum wage.

## MEMORANDUM OF LAW

The Parties reached a settlement which fairly and reasonably resolves the Parties' claims and defenses, and was negotiated at arm's length between counsel for all parties.  As such, the Court should enter an order approving the settlement accordingly.

## I.   The Proposed Settlement Fairly and Reasonably Resolves the Parties' Claims and Defenses.

### A.   Standard for Approval of Settlement of FLSA Collective Actions

In reviewing a settlement of a private FLSA claim, the court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1355 (11th Cir. 1982); *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13- 2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015).  When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that

are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### B.    A Bona Fide Dispute Exists Over Liability and Damages.

In reviewing the settlement of a plaintiffs' FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) (quotations and citations omitted). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id; accord, Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

A bona fide dispute clearly exists in this case which was heavily litigated for over two years. Plaintiffs claim they worked over 40 hours in single workweeks without being paid overtime. Plaintiffs contend that they are entitled to unpaid overtime for the time worked over 40 hours in single workweeks Defendants specifically deny that Plaintiffs are owed any additional compensation for overtime

or other wages under the FLSA or any other laws. Defendants contend that Plaintiffs are properly classified as independent contractors and, even if they were found to be employees, are exempt from the FLSA's overtime provisions. *See Padilla v. Redmont Properties, LLC*, No. 2:17-CV-01826-MHH, 2018 WL 6266855, at *3 (N.D. Ala. Nov. 30, 2018) (A bona fide dispute exits because "the plaintiffs maintain that the defendants failed to compensate them as required by the FLSA. The defendants contend that they had no obligation to the plaintiffs under the FLSA because the plaintiffs were independent contractors, not employees. This bona fide dispute supports the parties' proposed settlement.") (internal citations omitted)

Finally, Defendants contend that the case could not proceed on a collective basis and would likely be decertified based on the many differences between and among the Opt-In Plaintiffs.

In addition to their many disputes regarding liability and decertification of the collective, the Parties had opposing views on other damages components such as: (1) how to calculate damages, (2) whether liquidated damages were available; and (3) whether a two-year or three-year limitations period applied. *See Aranda v. R.E.D.A., Inc.*, No. 2:18-CV-01231-MHH, 2018 WL 6570877, at *2 (N.D. Ala. Dec. 13, 2018) (finding bona fide dispute "concerning, among other things . . . the extent

to which the defendants willfully violated the FLSA such that a three-year statute of limitations would apply in this case.")

Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery, and the uncertainty of dispositive motion practice, decertification, and trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendants in exchange for releases of claims by Plaintiffs and dismissal of this case with prejudice, among other consideration, in order to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C.   The Settlement Is Fair and Reasonable.

In addition to resolving a bona fide dispute between the Parties, the settlement achieved is fair and reasonable and should be approved for several reasons. First, the proposed settlement arises out of an action for alleged unpaid overtime and other wages brought by Plaintiffs against their alleged employers. While the amount each Plaintiff obtains will necessarily depend on the number of workweeks he or she

operated their business during the limitations period and whether they entered into an arbitration agreement and/or class/collective action waiver with Defendants, the settlement is based upon Plaintiffs' income and the number of overtime hours alleged for each week during the recovery period.  Plaintiffs believe such a compromise is reasonable under the circumstances and in light of the defenses (including potentially enforceable arbitration agreements) and risks of litigating this matter. Thus, Plaintiffs and Plaintiffs' Counsel believe this is a fair recovery considering that Defendants had: (1) reasonable arguments for why the Plaintiffs should get no recovery at all; (2) a strong chance of having the collective class decertified – with the claims of all but the Named Plaintiffs being dismissed entirely; (3) legitimate arguments that liquidated damages were not available; (4) legitimate arguments that a two-year look-back period would apply, which would have eliminated entirely any possible recovery for some Plaintiffs; and (5) arguments that even had Plaintiffs prevailed the damages would have been very low.

Second, there is no collusion that occurred between the Parties or their counsel. *See Schneider v. Goodyear Tire & Rubber Co.,* No. 13-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2015) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk).  Rather, this settlement was reached as a result of arm's-

length negotiations between the Parties through experienced attorneys and with the oversight of one of the premier wage/hour class action mediators.

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel who are experienced in handling wage and hour collective actions. Plaintiffs' Counsel has the experience to assess the risks of continued litigation and benefits of settlement and have done so in this action. Plaintiffs' Counsel also has a long-standing multijurisdictional practice representing employees with claims against employers similar to the claims asserted in this case. Defense counsel is likewise experienced in defending similar claims and reaching settlements similar to this one that have been approved by other federal courts. Counsel for both parties have advised their respective clients regarding the settlement and they have recommended judicial approval. Courts routinely give those recommendations weight. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Fourth, the range of possible recovery in this case was uncertain. As noted above, Plaintiffs were at risk of recovering little or nothing at all due the risk of decertification and testimony undermining the merits of their claims. Moreover, the Parties had very divergent positions on liability overall and damages.

Fifth, the proceedings have advanced through initial pleadings, fact investigation and pre-conditional certification discovery, permitting the Parties and their experienced counsel to: (i) collect, obtain, and review evidence; (ii) review and assess written discovery responses, data and other information; (iii) depose  the *Tate* Named Plaintiffs and assess the evidence provided  in support of the claims or defenses in this matter and the credibility of the Named Plaintiffs; (iv) evaluate their claims and defenses; (v) understand the scope of potential damages; and (vi) engage in negotiations with the mutual understanding that continuing toward dispositive motion practice and a decertification motion process would be a difficult, costly, and uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable.  Without question, if the case had not settled, the Parties would have spent significant time and resources briefing decertification and dispositive motions.  After the resolution of these motions, the Parties would have had to engage in expensive and extensive efforts to prepare pretrial submissions and prepare for trial in this matter while those motions were pending and, eventually, may have faced the prospect of an expensive, lengthy trial as well as likely post-trial motions and appeals and post-trial motions.  Rather than take this path, the Parties directed their efforts toward an informed, efficient resolution of Plaintiffs' claims.

While a number of issues remain unresolved in this litigation, the expansive discovery and fact investigation processes enabled counsel to assess the respective strengths and weaknesses of their case and reach the conclusion that settlement is in the Parties' best interests.  The settlement eliminates the inherent risks both sides would face if this case were to continue.  Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

## II.     Plaintiffs' Counsel's Requested Award of Attorneys' Fees and Costs Is Reasonable and Should Be Fully Granted.

The proposed award of attorneys' fees and costs is more than fair, reasonable, and should be approved.  Indeed, the attorneys' fees component of the settlement is reasonable and does not fully compensate Plaintiffs' Counsel for the time and effort spent in litigating this matter. Defendants do not oppose the payment of the agreed-upon amount of Plaintiffs' Counsel's attorneys' fees, litigation expenses, and costs from the settlement amount.  Moreover, "the attorneys' fees provision[] of the . . . FLSA exist to enable Plaintiffs to employ reasonably competent lawyers without costs to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.. Inc.*, 732 F.2d 495, 502 (6th Cir. 1984).

As the United States Supreme Court has recognized, without the class/collective action mechanisms, individuals with small claims lack the economic

14

resources to vigorously litigate their rights.  Without compensation to those attorneys who are willing to undertake the inherent complexities and unknowns of class and collective action litigation, enforcement of the federal and state laws would be jeopardized.  *See Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 161 (1974); *see also Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). (The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.)  Thus, attorneys taking on class and collective actions enable litigants to pool their claims, thus providing a huge valuable service to the judicial process and society as a whole.

As stated above, the complexity of this case and the novelty of the issues presented required a high level of skill and knowledge regarding wage and hour class collective action law. It is respectfully submitted that Plaintiffs' Counsel have unique skills and qualifications in the area of wage and hour class/collective action litigation, and maintain nationwide class and collective action wage and hour practices.  As a result, Plaintiffs' Counsel understand first-hand the risks, difficulties and costs associated with actually preparing and taking a wage and hour class action to trial, as opposed to negotiating a favorable compromised settlement agreement.

Plaintiffs' attorneys' fees and costs are reasonable given the result obtained, time expended, and time yet to be expended in administering the proposed

settlement. *See Mclain et. al. v. First Acceptance Corp.*, No. 3-17-cv-00408 [ECF No. 57] (M.D. Tenn. 2018) (Order approving attorneys' fees and costs approximating 66% of the total settlement amount); *Wilson et. al. v. MMR Senior Alliance Corp et. al.*, No. 3:17-cv-1412 [ECF No. 56] (M.D. Tenn. 2018) (Order approving attorneys' fees and costs approximating 50% of the total settlement amount). This case was actively litigated, and Defendants do not challenge that the attorneys' fees and costs award reached as part of this settlement is fair and reasonable.

## CONCLUSION

This FLSA collective action settlement is a product of an arm's-length negotiation between the Parties and their counsel, which resolves a bona fide dispute over allegedly owed overtime wages. As such, the settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, Plaintiffs respectfully request that this Court approve the Parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above. Further, Plaintiffs' Counsel request that this Court award reasonable attorneys' fees and litigation costs in the amount requested. Finally, Plaintiffs request that this action be dismissed with prejudice.

Respectfully submitted,


By: *J. Russ Bryant*
Gordon E. Jackson* (TN BPR #08323)
J. Russ Bryant* (TN BPR #33830)
Paula R. Jackson* (TN BPR #20149)
Robert E. Morelli III* (TN BPR #37004)
**JACKSON, SHIELDS, YEISER HOLT
OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
T: (901) 754-8001
F: (901) 759-1745
E: gjackson@jsyc.com
rbryant@jsyc.com
pjackson@jsyc.com
rmorelli@jsyc.com


Kimberly E. Linville (ASB-7835-K33-P)
Larry B. Moore (ASB-4345-O74-L)
Ian Michael Berry (ASB-7372-A32-B)
MOORE, BERRY & LINVILLE
211 North Court Street
Florence, Alabama 35630
T: (256) 718-0120
F: (256) 718-0251
E: klinville@mblattorneys.com
lbmoore@mblattorneys.com
imberry@mblattorneys.com


&


Michael L. Weinman* (TN BPR #015074)
WEINMAN & ASSOCIATES
101 N. Highland Ave.
P.O. Box 266
Jackson, Tennessee 38302
T: 731-423-5565

17

F: 731-423-5372
E: mike@weinmanthomas.com

*Admission *Pro Hac Vice*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically on this the 19th day of May, 2020. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and below. Parties may access this filing through the Court's electronic filing system.

*/s/J. Russ Bryant*