FILED

2020 May-19  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between Plaintiff Antuwane Tate, Brandon McCollins, Valenti Armstead, William Whitley, and Kenneth Cox (referred to by name or as "Named Plaintiffs") on behalf of themselves and Opt-In Plaintiffs (Charles Adamo, Filippo Adamo, Michael Allen, Scott Andrews, Bruce Barnes, Douglas Behl, Thomas Berg, Dekwon Boclear, Adrian Bond, LaShunda Bond, Virginia Bonner, Richard Bontrager, Louis Bradshaw, Joshua Brown, Paul Cluck, George Commander, Dawn Creswell, Courtney & Scott Cunningham, Frank Dalessandro, Gary Dane, Abel Dominguez, Karl Edmondson, Cheryl Faulkner, Daniel Furrow, James Gentry, William Goss, Michael Greco, Jason Hale, Richard Hardy, Richard Hawkins, Stephen Haynes, Dennis Heckard Jr., Cordero Hollowell, Warren Hudson, John Hutcherson, Ronald Jackson, Kimberly Jacobs, Keith Jeffrey, Timothy Johnson, Darrell Jones, Michael Jones, Niall Lawson, Wayne Lehtimaki, Carmelle Machi, Barry Maples, Christopher McCartney, Justin Moore, Roderick Moore, Peter Nadeau, Tony Painter, Michael Perdue, Jeffrey Pizzala, Craig Portman, Rafael Restrepo, Robert Revis, John Rice Jr., Julio Rivera, Mabel Roberts-Cole, Teri Sue Rupert, Arif Said, Joel Saintfort, David Sanchez, Derek Sciulli, Brittni Sierra, Anthony Simpson, Latravion Smith, William St. Marie, Scott Stark, Thomas Stedding, Walter Sutphin, Arturo Tarazona, Wallace Taylor, Jake Thomas, Thomas Tusa, Leslie Valrie, Peter Vincitore, Stanley Whitehead, Terry Wilferd, Christopher Williams, Kenneth Williams, Jeffrey Wright, and Paul Zysk) (hereinafter, collectively, excluding Named Plaintiffs, the "Opt-In Plaintiffs") ( Named Plaintiffs and Opt-In Plaintiffs collectively referred to as "Plaintiffs") and Defendants Bimbo Bakeries USA, Inc.[1] ("BBUSA") and Bimbo Foods Bakeries Distribution, LLC ("BFBD") (collectively the "Defendants") (Named Plaintiffs, Opt-In Plaintiffs and Defendants collectively, the "Parties") in order to settle claims arising under the Fair Labor Standards Act ("FLSA") and all other federal, state, or local wage and hour laws and wage payment laws (including those concerning breaks, wage statements, wage notices, and any penalties or other damages related to alleged misclassification as contractors, overtime, or minimum wage), related common law theories and contract-related claims, as well as counterclaims and third-party claims, that were or could have been brought in the action pending in the United States District Court for the Northern District of Alabama ("the Court") and captioned *Kenneth Cox et al. v. Bimbo Bakeries USA, Inc. & Bimbo Foods Bakeries Distribution, LLC*, Case No. 5:19-cv-00577-LCB  ("the Action").  All obligations under this Agreement apply to the Plaintiffs and any business operated or owned in whole or in part by any of the Plaintiffs that contracts or contracted with Defendants or any of Defendants' parents, subsidiaries, or affiliates or their predecessors.

WHEREAS, on April 16, 2020, all deadlines in the Action were adjourned and the Parties proceeded to finalize a settlement of the Action; and

---

[1]    BBUSA disputes that it is a proper party given the absence of a contractual or other relationship with Plaintiffs.  By this Agreement, BBUSA is not admitting that BBUSA was properly included as a Defendant.  Instead, BBUSA does so only in order to obtain a release for BBUSA.  Moreover, BBUSA's obligations under the Agreement may be carried out by affiliates of BBUSA.

WHEREAS, the Parties desire to avoid the expense and inconvenience of continued litigation;

NOW, THEREFORE, in consideration of the mutual covenants set forth in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties stipulate and agree as follows:

1.     **Settlement Contingent on Court Approval and Named Plaintiffs' Acceptance.** This settlement is contingent on the entry of an order by the Court approving this settlement ("Approval Order") and dismissing the entire Action (including all claims, counterclaims, and third-party claims asserted in the Action) with prejudice (the entry date of the Approval Order defined as "the Approval Date").  If the Court does not enter such an order, or if any Party or third-party, person or entity appeals such an approval order and that appeal results in modification of the Approval Order, in whole or in part, this Agreement (other than the non-admission and confidentiality provisions, which will remain in effect as to the settlement negotiations, term sheet and this Agreement) will be null and void, the Action will continue to go forward in the Court, all Parties will return to the *status quo ante*, and the Parties will jointly propose a new schedule to the Court for discovery and motion practice (the "Return to Status Quo Procedures").  Plaintiffs' counsel from the law firms of Jackson, Shields, Yeiser, Holt, Owen & Bryant,  Weinman & Associates, and Moore, Berry & Linville (collectively "Plaintiffs' Counsel") will be responsible for preparing the motion for Court approval and any accompanying legal papers ("the Approval Motion"), which will be provided to Defendants' Counsel at least seven (7) business days before filing, will incorporate reasonable revisions by Defendants' Counsel, will attach this Agreement as an exhibit, will attach a proposed order dismissing the Action with prejudice (to be negotiated with Defendants' Counsel and provided for review on the same schedule), and will be publicly filed through the Court's ECF system.  Pursuant to the language of the Notice previously sent to all Opt-In Plaintiffs who joined this Action, all Opt-In Plaintiffs will be bound by the settlement of this Action and the corresponding release, regardless of whether they cash their settlement checks because, by signing and returning the Consent to Opt-In to Collective Action form, they agreed to designate Named Plaintiffs and their counsel as their agents to make decisions on their behalf concerning all matters relating to this litigation, including settlement.  The Approval Order proposed to the Court will confirm that Named Plaintiffs' execution of this Agreement is binding on all Opt-In Plaintiffs, and that all Opt-In Plaintiffs are bound by the release below regardless of whether the Opt-In Plaintiff elects to cash his or her settlement payment.  The Court's failure to adopt that approach will be grounds for Defendants to void the settlement.  Moreover, Defendants retain the right to void this Agreement if (i) any Named Plaintiff refuses to accept all terms of this Agreement on their own behalf and as representative of all Opt-In Plaintiffs or purports to appeal the Approval Order or (ii) if Named Plaintiff Whitley refuses to execute the amended arbitration provision agreement pursuant to Paragraph 4(d).  In the event that Defendants void the settlement for any reason allowed under this Agreement, the Return to Status Quo procedures shall apply.

2.     **No Admission of Liability.**  Any actions or payments made hereunder are made solely for purposes of settlement and compromise and are not to be construed as (and are not) any admission of liability or unlawful conduct on the part of Defendants or any of the Releasees (defined below), and Defendants and the Releasees expressly deny any such liability or unlawful conduct.  Plaintiffs' actions or agreements hereunder are similarly made solely for the purpose of

settlement and compromise and shall not be construed as (and are not) any admission of liability or unlawful conduct on the part of Plaintiffs or their businesses.

3.      **Dismissal of Opt-In Plaintiffs with Expired Claims**. Within five (5) days after the Approval Date, Plaintiffs' Counsel will dismiss Candice Williams, Dawn Schumacher, Jeffrey Kaska, Jeffrey Scharfhausen and Michael R. Smith from the case with prejudice because they each ceased operating their distribution business prior to their respective statutory claims period under the Fair Labor Standards Act.  Plaintiffs' Counsel agree not to pursue claims on behalf of these individuals based on equitable tolling or other principles that allegedly would extend the limitation period for their claims.

4.      **Total Payment under This Agreement.**  Contingent on Court approval of this Agreement, all other requirements under this Agreement, no appeal of the Approval Order resulting in modification of the Approval Order, and Defendants not voiding this Agreement, Defendants will pay an amount not exceeding **$703,000.00** (the "Settlement Payment") in exchange for the release of legal claims described in Paragraph 6 below and otherwise in connection with this Agreement.  A mutually agreeable claims administrator ("the Settlement Administrator") will be responsible for the administration of all payments and tax reporting associated with this settlement. The cost of the Settlement Administrator will be paid out of the $703,000.00 up to a maximum of $10,000.00, with Defendants to pay any additional amount beyond $10,000.00 if necessary for administration. Plaintiffs' Counsel waive all other claims for fees/costs (except as provided expressly in this Agreement) and rights to appeal the Approval Order and Named and Opt-In Plaintiffs will not appeal such Order.

A negotiated neutral/court-approved notice ("Notice of Settlement") will be distributed to Plaintiffs within 14 days after the Approval Date, which will (i) inform them of their individual settlement payment negotiated by Plaintiffs' Counsel who had authority to bind them per the Notice/Opt-In Form when they joined the action; (ii) will also inform certain Plaintiffs subject to Paragraph 4(d) of this Agreement of the option to receive an additional $1,000 payment if they sign and return the enclosed arbitration amendment within 20 days; and (iii) inform certain Plaintiffs subject to Paragraph 5 of this Agreement of their obligation to execute and return the enclosed declaration within 20 days in order to receive any payment.

Defendants will wire a single final amount to the Settlement Administrator (provided each of the Plaintiffs and Plaintiffs' Counsel already provided Defendants with its or their IRS Form W-9 and/or any other tax documents reasonably requested by Defendants) within ten (10) days after the close of the twenty (20) day period in Paragraph 4(d) of this Agreement for certain Plaintiffs to sign and return an arbitration agreement and declaration after the mailing of the Notice of Settlement or, in the event of an appeal from the Approval Order that does not result in voiding this Agreement pursuant to Paragraph 1 above, twenty (20) calendar days after the appellate process has been exhausted (the "Funding Date").

All payments to Plaintiffs and Plaintiffs' Counsel will be made by the Settlement Administrator within ten (10) days after receipt of the funds from Defendants.  Along with each payment to Plaintiffs under this Agreement, the Settlement Administrator shall serve letters prepared by Defendants' Counsel with language (i) confirming that the Plaintiff has released all claims against

Releasees arising under the Fair Labor Standards Act ("FLSA"), and all other federal, state, or local wage and hour laws and wage payment laws (including those concerning breaks, wage statements, wage notices, and any penalties or other damages related to alleged misclassification as contractors, overtime, or minimum wage), related common law theories and contract-related claims; (ii) acknowledging that the Plaintiff will continue to be classified as an independent contractor and that by accepting the payment, the Plaintiff acknowledges that such classification is proper and lawful under the FLSA and all other applicable federal, state, or local laws, rules, or regulations; and (iii) reminding them of the confidentiality obligations below. The Settlement Administrator shall provide copies of each letter/payment to Defendants' Counsel within fourteen (14) days after each such payment is issued.

The Settlement Administrator will issue an IRS Form 1099 for each payment made by the Settlement Administrator.  Plaintiffs' Counsel and Named Plaintiffs agree that they and each Opt-In Plaintiff will complete an IRS Form W-9 in order to receive payment.  By accepting the above payment, Plaintiffs' Counsel and each Plaintiff acknowledge that he or she is solely responsible for the payment of taxes relating to the payment.

a. **Payments to Named Plaintiffs and Timely Opt-In Plaintiffs Without Arbitration Agreements.**  From the Settlement Payment, **$194,300.00** shall be divided among the 5 Named Plaintiffs and 59 Opt-In Plaintiffs that timely filed their opt-in forms and do not have a mandatory arbitration agreement in the amounts set forth in Exhibit A to this Agreement.

The Settlement Administrator will void all checks made pursuant to Paragraph 4(a) that remain uncashed six (6) months after distribution and will return the associated monies to Defendants within ten (10) days after each check is voided.

b. **Payments to Late Opt-In Plaintiffs and Opt-In Plaintiffs With Arbitration Agreements.**   From the Settlement Payment, **$40,700.00** shall be divided evenly among the 23 Opt-In Plaintiffs that belatedly filed their opt-in forms or have mandatory arbitration agreements in the amounts set forth in Exhibit B to this Agreement.

The Settlement Administrator will void all checks made pursuant to Paragraph 4(b) that remain uncashed six (6) months after distribution and will return the associated monies to Defendants within ten (10) days after each check is voided.

c. **Service Award Payment to Named Plaintiffs**.  From the Settlement Payment, **$70,500.00** shall be divided among the 5 Named Plaintiffs as service awards for their involvement in this case in the amounts set forth in Exhibit C to this Agreement.

If the Court disapproves any portion of the service award for Named Plaintiffs but otherwise approves this Agreement and Defendants do not void this Agreement, the disapproved monies will revert to Defendants.

d. **Extra Payments to Current IBP Plaintiffs Who Execute and Return a Mandatory Dispute Resolution Agreement.** From the Settlement Payment, the following Plaintiffs are eligible to receive an extra payment of **$1,000.00** in exchange for signing and returning to the Settlement Administrator the Mandatory Dispute Resolution Agreement attached as Exhibit D within twenty (20) days after the mailing of the Notice of Settlement to Plaintiffs: Filippo Adamo, Michael Allen, Scott Andrews, Bruce Barnes, Richard Bontrager, Louis Bradshaw, Paul Cluck, Frank Dalessandro, Abel Dominguez, Richard Hardy, John Hutcherson, Kimberly Jacobs, Wayne Lehtimaki, Justin Moore, Jeffrey Pizzala, Mabel Roberts-Cole, Teri Sue Rupert, Arif Said, Joel Saintfort, Brittni Sierra, Arturo Tarazona, Peter Vincitore, Stanley Whitehead, William Whitley and Paul Zysk.

Along with the Notice of Settlement, the Settlement Administrator will enclose the Mandatory Dispute Resolution Agreement (provided as Exhibit D) to the 25 current Plaintiffs identified in Paragraph 4(d) and include a notification in the Notice of Settlement that they are entitled to an additional $1,000.00 payment if they choose to sign the Mandatory Dispute Resolution Agreement and timely return the executed agreement to Defendant via the Settlement Administrator (except for Named Plaintiff Whitley, who is required to execute the Mandatory Dispute Resolution Agreement as part of this Agreement, but who will still be entitled to the $1,000.00 payment in consideration for doing so). Plaintiffs' Counsel agree that they shall not in any way discourage any Plaintiff from signing and agreeing to the Mandatory Dispute Resolution Agreement.

Defendants will retain payments under Paragraph 4(d) of each Plaintiff who fails to return a Mandatory Dispute Resolution Agreement to the Settlement Administrator by the twenty (20) day deadline and such funds will be subtracted from the Settlement Payment.

e. **Payment to Plaintiffs' Counsel.** From the Settlement Payment, Plaintiffs' Counsel will receive a payment of **$362,500.00** to compensate them for legal fees and expenses. If the Court disapproves any portion of the requested fees and expenses but otherwise approves this Agreement and Defendants do not void this Agreement (which Plaintiffs' Counsel will not seek to appeal), the disapproved monies will revert to Defendants. The Settlement Administrator will distribute the Court-approved payment as follows:

    i. Weinman & Associates in the amount of $141,230.06.

    ii. Jackson, Shields, Yeiser, Holt, Owen & Bryant in the amount of $187,260.73.

    iii. Moore, Berry & Linville in the amount of $34,009.21.

Plaintiffs' Counsel affirm that no other lawyers or law firms have any right to or interest in the fees and costs at issue in this case.

5.     **Current Plaintiffs' Agreement to Execute Declaration as a Condition of Payment.** Each Plaintiff currently operating a distribution business, as identified in Exhibits A, B and C, must execute and return to Defendants the declaration attached as Exhibit E (the "Declaration") confirming the material facts supporting their appropriate classification as independent contractors within twenty (20) days after the mailing of the Notice of Settlement to Plaintiffs. Along with the Notice of Settlement, the Settlement Administrator will send to the current Plaintiffs identified in Exhibits A, B and C the Declaration and include a notification in the Notice of Settlement that they must execute and return the Declaration within twenty (20) days after the mailing of the Notice of Settlement.

The Settlement Administrator shall not distribute any payment from Paragraphs 4(a)-(d) to a current Plaintiff identified in Exhibits A, B and C until it receives an executed Declaration from that current Plaintiff. All monies withheld pursuant to this paragraph as of the Funding Date shall be retained by Defendants and be subtracted from the Settlement Payment but shall not impact the binding release below.

6.     **Release of Claims.**   In consideration of the offer of the payments described in this Agreement, Plaintiffs (on behalf of each and all of their respective representatives, employees, agents, estates, heirs, successors and assigns, as well as any business entity in which each has or had any ownership interest and each and all of their past, present, and future directors, officers, insurers, and employees/contractors/helpers of such entity) waive, release, and forever discharge "Releasees" (defined to include: Bimbo Bakeries USA, Inc.; Bimbo Foods Bakeries Distribution, Inc.; and Bimbo Foods Bakeries Distribution, LLC; and each and all of their past, present, and future parents, subsidiaries, members and affiliates and all of their insurers, predecessors, successors and assigns, directors, officers, agents, employees and/or attorneys, all both individually and in their official capacities) from any and all legally waivable claims, actions or causes of action, suits, claims, complaints, contracts, agreements, promises, liabilities, torts, debts, damages, controversies, judgments, rights and demands, whether existing or contingent, known or unknown, suspected or unsuspected, arising prior to the Approval Date and arising under the FLSA or any other federal, state, or local law or common law or legal theory providing relief for a wage and hour (including retaliation), wage payment, or contract-related compensation claim, including those concerning breaks, wage statements, wage notices, and any penalties or other damages related to alleged misclassification as contractors, overtime, or minimum wage.  This release also includes all claims for legal costs and expenses, legal fees, liquidated damages, interest, declaratory or injunctive relief, or other relief relating to or stemming from such released claims. Releasees hereby waive, release, and forever discharge Plaintiffs from the counterclaims and third-party claims asserted by Defendants as part of this Action and arising prior to the Approval Date.

7.     **Confidentiality.**   Plaintiffs and Plaintiffs' Counsel will not disclose, directly or indirectly, any information regarding the existence, terms, or negotiation of this Agreement, and/or the amount of the Settlement Payment and the individual payments specified herein (in specific or general terms such as "thousands of dollars") or other consideration as set forth herein, to any person or organization except (i) as required to seek Court approval; (ii) to an immediate family

6

member, financial consultant, accountant, tax return preparer, or attorney (provided each such person or persons agree to the confidentiality obligations set forth in this Agreement); or (iii) as compelled to do so by valid subpoena or process, in which event Plaintiffs and/or Plaintiffs' Counsel agree to notify Defendants and the Releasees through Defendants' counsel, Morgan, Lewis & Bockius LLP, Attn: Michael J. Puma, Esq., 1701 Market Street, Philadelphia, PA 19103, telephone number: 215.963.5305, within 48 hours of receiving notification of such requirement and in advance of any action required to be taken by them.  If Plaintiffs or Plaintiffs' Counsel receive media inquiries about this litigation or the settlement, the response will be limited to "the matter has been resolved and dismissed."  A notice of this obligation will be included with the settlement checks distributed.  Plaintiffs recognize and acknowledge Defendants' interest in maintaining the confidentiality of this Agreement, as well as the negotiations leading up to this Agreement, and that Defendants would not have entered into this Agreement without the confidentiality provisions in this Agreement.  If Plaintiffs or Plaintiffs' Counsel violate this confidentiality provision prior to the Approval Date, Defendants may rescind the Agreement, rendering it null and void, and will no longer be bound by any of its terms. Plaintiffs will each be liable for liquidated damages in the amount of their individual settlement payment if they violate their confidentiality obligation after the Approval Date. Following the Approval Date, the Court will retain jurisdiction to enforce the provisions of the Agreement, including this confidentiality paragraph.

8.    **Consideration.**  Plaintiffs' release (Paragraph 6), confidentiality (Paragraph 7), and all other obligations and promises by Plaintiffs in this Agreement are made in exchange for the Settlement Payment of this Agreement, the sufficiency of which is hereby acknowledged.

9.    **Knowing and Voluntary Agreement.**   The Parties have carefully read this Agreement, have had an opportunity to consult with their attorneys, and are executing this Agreement voluntarily and with full knowledge and understanding of its significance, meaning, and binding effect.  The Parties are competent to understand the content and effect of this Agreement.  Their decision to enter into this Agreement has not been influenced by fraud, duress, coercion, mistake, or misleading information.

10.    **Governing Law.**  This Agreement will be governed and construed according to Pennsylvania law.

11.    **Integration, Modification, and Waiver.**  This Agreement, together with the Distribution Agreements of current Plaintiffs and the releases executed by Plaintiffs upon selling some or all of their distribution rights and the new amendments to provide for arbitration for current Plaintiffs, constitutes the entire agreement of the Parties, and supersedes all prior understandings, whether oral or written, between them, pertaining to the released claims described in Paragraph 6 above, including but not limited to the Confidential Terms of Settlement previously executed by the Parties on April 7, 2020.  Any modification of this Agreement must be made in writing and signed by all Named Plaintiffs and Defendants.  The failure of any of the Parties at any time to require the performance of any provision hereof shall in no manner affect the right of the Parties at a later time to enforce the same.

12. **Authority.** The Parties each warrant and represent that they are fully authorized to execute and to enter into this Agreement, and the Parties have not sold, assigned, granted, or transferred to any person any of the released claims described in Paragraph 6 above.

13. **Successors and Assigns.** This Agreement shall inure to the benefit of and be binding upon the Parties and their affiliates, heirs, successors, and assigns, except as otherwise provided herein.

14. **Counterparts.** This Agreement may be executed in one or more counterparts, and if so executed each such counterpart shall have the force and effect of an original. A facsimile or copy of an original signature or an electronic signature transmitted to the other party is effective as an original signature. The Parties agree that for all purposes, a .PDF or facsimile of this Agreement shall have the same legal force and effect as the originals, and no party shall have the duty to furnish an original of this Agreement.

15. **Mutual Drafting.** The Parties agree that each has contributed to the drafting of this Agreement and none of the Parties shall have any part of this Agreement interpreted against their interests on the basis that the Parties drafted the language to be interpreted.

16. **No Other Clients or Prospective Clients.** Plaintiffs' Counsel confirm that other than the Plaintiffs, they do not currently have any other independent operator clients or prospective clients who have contracted with Releasees and are not aware of any other individual or business considering claims against Releasees.

17. **Non-Cooperation/Encouragement.** Plaintiffs agree not to encourage any other individual or business who contracted with Releasees to purport to challenge his/her/its independent contractor status under any federal, state, or local law, rule or regulation, unless required by an enforceable subpoena to testify. Like the confidentiality obligation above, a notice of this obligation will be included with the settlement checks distributed.

18. **Acknowledgment of Independent Contractor Status.** Plaintiffs acknowledge that they will continue to be classified as independent contractors and that such classification is proper and lawful under the FLSA and all other applicable federal, state, or local laws, rules, or regulations. This acknowledgement will be included on the settlement checks distributed.

**IN WITNESS WHEREOF**, and with the intention of being legally bound hereby, the Parties have executed this Agreement on the dates noted below.

*— Signature Page Follows —*

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Antuwane Tate

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Brandon McCollins

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Valenti Armstead

_____
**Signature**

Dated: _____, 2020.

**BIMBO BAKERIES USA, INC. and BIMBO FOODS BAKERIES DISTRIBUTION, LLC**

By:     Craig Pizer

_____
**Signature**

Title: Vice President and General Counsel

Dated: _**May 5**_____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Antuwane Tate

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Brandon McCollins

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Valenti Armstead

_____
**Signature**

Dated: _____, 2020.

**BIMBO BAKERIES USA, INC. and BIMBO BAKERIES DISTRIBUTION, LLC**

By:     Craig Pizer

_____
**Signature**

Title: Vice President and General Counsel

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS
INDIVIDUAL CAPACITY AND AS
REPRESENTATIVE OF ALL OPT-IN
PLAINTIFFS**

By:     William Whitley

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS
INDIVIDUAL CAPACITY AND AS
REPRESENTATIVE OF ALL OPT-IN
PLAINTIFFS**

By:     Kenneth Cox

_____
**Signature**

Dated: ___05-06-2020_____, 2020.

**PLAINTIFFS' COUNSEL as to
Paragraphs 1, 3, 4, 4(d), 4(e), 5, 7 and 16**

By:     [Plaintiffs' Counsel]

_____
**Signature**

Dated: ___05-11-2020_____, 2020.

By:     [Plaintiffs' Counsel

_____
**Signature**

Dated: ___05-11-2020_____, 2020.

10

By:   [Plaintiffs' Counsel

*Robert   Morelli*

**Signature**

Dated:   05-11-2020
_____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:    Antuwane Tate

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:    Brandon McCollins

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:    Valenti Armstead

_____
**Signature**

Dated: _____, 2020.

**BIMBO BAKERIES USA, INC. and BIMBO BAKERIES DISTRIBUTION, LLC**

By:    Craig Pizer

_____
**Signature**

Title: Vice President and General Counsel

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Antuwane Tate

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Brandon McCollins

_____
**Signature**

Dated: __05-03-2020__, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Valenti Armstead

_____
**Signature**

Dated: _____, 2020.

**BIMBO BAKERIES USA, INC. and BIMBO BAKERIES DISTRIBUTION, LLC**

By:     Craig Pizer

_____
**Signature**

Title: Vice President and General Counsel

Dated: _____, 2020.

9

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Antuwane Tate

_____
**Signature**

Dated: \_\_\_05-03-2020\_\_\_, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Brandon McCollins

_____
**Signature**

Dated: _____, 2020.

**NAMED PLAINTIFF, IN HIS INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF ALL OPT-IN PLAINTIFFS**

By:     Valenti Armstead

_____
**Signature**

Dated: _____, 2020.

**BIMBO BAKERIES USA, INC. and BIMBO BAKERIES DISTRIBUTION, LLC**

By:     Craig Pizer

_____
**Signature**

Title: Vice President and General Counsel

Dated: _____, 2020.

9

**NAMED PLAINTIFF, IN HIS
INDIVIDUAL CAPACITY AND AS
REPRESENTATIVE OF ALL OPT-IN
PLAINTIFFS**

By:     William Whitley

_____
**Signature**

Dated: ___05-01-2020___, 2020.

**NAMED PLAINTIFF, IN HIS
INDIVIDUAL CAPACITY AND AS
REPRESENTATIVE OF ALL OPT-IN
PLAINTIFFS**

By:     Kenneth Cox

_____
**Signature**

Dated: _____, 2020.

**PLAINTIFFS' COUNSEL as to
Paragraphs 1, 3, 4, 4(d), 4(e), 5, 7 and 16**

By:     [Plaintiffs' Counsel]

_____
**Signature**

Dated: _____, 2020.

By:   [Plaintiffs' Counsel

_____
**Signature**

Dated: _____, 2020.

# EXHIBIT A

| No. | Name | Settlement Amount | Current/Former Plaintiff |
|-----|------|------------------|--------------------------|
| 1 | Adamo, Charles | $2,081.31 | Former |
| 2 | Adamo, Filippo | $4,162.61 | Current |
| 3 | Allen, Michael | $4,136.27 | Current |
| 4 | Andrews, Scott | $4,136.27 | Current |
| 5 | Armstead, Valenti | $5,269.13 | Current |
| 6 | Barnes, Bruce | $4,188.96 | Current |
| 7 | Behl, Douglas | $1,554.39 | Former |
| 8 | Berg, Thomas | $3,846.47 | Former |
| 9 | Bontrager, Richard | $4,136.27 | Current |
| 10 | Commander, George | $1,500.00 | Former |
| 11 | Cox, Kenneth | $4,136.27 | Former |
| 12 | Cunningham, Courtney & Scott | $3,820.12 | Former |
| 13 | Dane, Gary | $1,500.00 | Former |
| 14 | Dalessandro, Frank | $4,162.61 | Current |
| 15 | Dominguez, Abel | $4,241.65 | Current |
| 16 | Faulkner, Cheryl | $1,500.00 | Former |
| 17 | Goss, William | $2,529.18 | Former |
| 18 | Greco, Michael | $1,500.00 | Former |
| 19 | Hale, Jason | $3,214.17 | Former |
| 20 | Hardy, Richard | $4,136.27 | Current |
| 21 | Hawkins, Richard | $1,500.00 | Former |
| 22 | Haynes, Stephen | $1,500.00 | Former |
| 23 | Heckard, Dennis Jr | $2,371.11 | Former |
| 24 | Hollowell, Cordero | $1,500.00 | Former |
| 25 | Hutcherson, John | $4,162.61 | Current |
| 26 | Jackson, Ronald | $1,500.00 | Former |
| 27 | Jacobs, Kimberly | $4,162.61 | Current |
| 28 | Jeffrey, Keith | $1,580.74 | Former |
| 29 | Johnson, Timothy | $1,500.00 | Former |
| 30 | Lehtimaki, Wayne | $4,241.65 | Current |
| 31 | Machi, Carmelle | $3,108.79 | Former |
| 32 | Maples, Barry | $3,345.90 | Former |
| 33 | McCartney, Christopher | $2,660.91 | Former |
| 34 | McCollins, Brandon | $5,269.13 | Current |
| 35 | Moore, Justin | $4,136.27 | Current |
| 36 | Nadeau, Peter | $2,818.98 | Former |
| 37 | Painter, Tony | $1,500.00 | Former |
| 38 | Perdue, Michael | $1,500.00 | Former |

| 39 | Pizzala, Jeffrey | $4,162.61 | Current |
|----|------------------|-----------|---------|
| 40 | Portman, Craig | $2,924.37 | Former |
| 41 | Restrepo, Rafael | $1,500.00 | Former |
| 42 | Revis, Robert | $2,160.34 | Former |
| 43 | Rice, John Jr | $1,500.00 | Former |
| 44 | Rivera, Julio | $1,580.74 | Former |
| 45 | Rupert, Teri Sue | $4,162.61 | Current |
| 46 | Said, Arif | $4,215.30 | Current |
| 47 | Saintfort, Joel | $4,162.61 | Current |
| 48 | Sanchez, David | $1,712.47 | Former |
| 49 | Sciulli, Derek | $2,898.02 | Former |
| 50 | Sierra, Brittni | $4,136.27 | Current |
| 51 | Simpson, Anthony | $1,500.00 | Former |
| 52 | St. Marie, William | $3,319.55 | Former |
| 53 | Stark, Scott | $2,292.07 | Former |
| 54 | Stedding, Thomas | $1,500.00 | Former |
| 55 | Sutphin, Walter | $3,345.90 | Former |
| 56 | Tarazona, Arturo | $4,136.27 | Current |
| 57 | Tate, Antuwane | $3,530.33 | Former |
| 58 | Taylor, Wallace | $1,554.39 | Former |
| 59 | Tusa, Thomas | $3,056.10 | Former |
| 60 | Vincitore, Peter | $4,162.61 | Current |
| 61 | Whitehead, Stanley | $4,136.27 | Current |
| 62 | Whitley, William | $6,639.10 | Current |
| 63 | Wright, Jeffrey | $1,791.50 | Former |
| 64 | Zysk, Paul | $4,109.92 | Current |
| **Total:** | | **$194,300.00** | |

# EXHIBIT B

| No. | Name | Settlement Amount | Current/Former Plaintiff |
|---|---|---|---|
| 1 | Boclear, Dekwon | $1,769.57 | Current |
| 2 | Bond, Adrian | $1,769.57 | Former |
| 3 | Bond, LaShunda | $1,769.57 | Former |
| 4 | Bonner, Virginia | $1,769.56 | Current |
| 5 | Bradshaw, Louis | $1,769.56 | Current |
| 6 | Brown, Joshua | $1,769.56 | Former |
| 7 | Cluck, Paul | $1,769.56 | Current |
| 8 | Creswell, Dawn | $1,769.57 | Former |
| 9 | Edmondson, Karl | $1,769.57 | Former |
| 10 | Furrow, Daniel | $1,769.56 | Former |
| 11 | Gentry, James | $1,769.56 | Current |
| 12 | Hudson, Warren | $1,769.57 | Former |
| 13 | Jones, Darrell | $1,769.57 | Former |
| 14 | Jones, Michael | $1,769.56 | Current |
| 15 | Lawson, Niall | $1,769.56 | Former |
| 16 | Moore, Roderick | $1,769.57 | Former |
| 17 | Roberts-Cole, Mabel | $1,769.56 | Current |
| 18 | Smith, Latravion | $1,769.57 | Former |
| 19 | Thomas, Jake | $1,769.57 | Former |
| 20 | Valrie, Leslie | $1,769.57 | Former |
| 21 | Williams, Christopher | $1,769.57 | Former |
| 22 | Williams, Kenneth | $1,769.56 | Current |
| 23 | Wilferd, Terry | $1,769.56 | Former |
| **Total:** | | **$40,700** | |

# EXHIBIT C

| No. | Name | Settlement Amount | Current/Former Plaintiff |
|---|---|---|---|
| 1 | Armstead, Valenti | $14,500.00 | Current |
| 2 | Cox, Kenneth | $12,500.00 | Former |
| 3 | McCollins, Brandon | $14,500.00 | Current |
| 4 | Tate, Antuwane | $14,500.00 | Former |
| 5 | Whitley, William | $14,500.00 | Current |
| **Total:** | | **$70,500.00** | |

# EXHIBIT D

## MANDATORY DISPUTE RESOLUTION AGREEMENT

This Mandatory Dispute Resolution Agreement ("AGREEMENT") describes the sole and exclusive method by which the undersigned DISTRIBUTOR and BIMBO FOODS BAKERIES DISTRIBUTION, LLC, with its principal office at 255 Business Center Drive, Horsham, PA 19044, and its parents, subsidiaries, or affiliates, including any entity that has contracted with DISTRIBUTOR (collectively, "BAKERY" or "COMPANY") will pursue any remedy for any COVERED DISPUTE (defined below).  Nothing herein prevents DISTRIBUTOR or BAKERY from taking any action (other than filing a lawsuit) which may be the subject of a COVERED DISPUTE, including taking over all or part of the operation of DISTRIBUTOR's Distribution Rights and/or classification of an Outlet and exercising its right under a Buy Back Agreement even though the ultimate propriety of such action must be determined through the procedures described in this AGREEMENT. Except with respect to BAKERY'S exercise of its Buy Back rights, if any, BAKERY will not sell, nor require DISTRIBUTOR to sell, the Distribution Rights until the procedures described in this AGREEMENT are concluded or the time for either party to further proceed with dispute resolution expires.  All obligations under this Agreement apply to DISTRIBUTOR (and its owners if DISTRIBUTOR is a business), who executes this Agreement and who contracts with BAKERY or its parents, subsidiaries, or affiliates or their predecessors.

13.1   **DISPUTE RESOLUTION PROCESS – EXCLUSIVE PROCESS**.  Except with respect to any Excluded Dispute (defined below) and as otherwise expressly provided in this Agreement, the parties agree that the provisions of this Article 13 are the sole and exclusive method by which any party will pursue any remedy for any Covered Dispute (defined below) (the "Mandatory Dispute Resolution Process").  The commencement of any dispute resolution procedure does not prevent COMPANY from taking any action (other than filing a lawsuit) which may be the subject of the Dispute, including taking over all or part of the operation of DISTRIBUTOR's Distribution Rights and/or classification of an Outlet and exercising its rights under a Buy Back Agreement.  Except with respect to COMPANY'S exercise of its Buy Back rights, if any, COMPANY will not sell, nor require DISTRIBUTOR to sell, the Distribution Rights until the Mandatory Dispute Resolution Process is concluded or the time for either party to further proceed with dispute resolution expires.

13.2   **DISPUTE INITIATION – NOTICE & INFORMAL RESOLUTION**.  In the event of any Covered Dispute the party initiating the Dispute must provide written notice of the Dispute within the applicable statute of limitations period.  The parties have sixty (60) calendar days thereafter to attempt to informally resolve the Dispute.

13.3   **BINDING MUTUAL ARBITRATION**.  If the parties are unable to resolve a Covered Dispute through informal resolution, the party initiating the Covered Dispute must initiate **mandatory binding arbitration**, by filing a complaint on an individual basis with the American Arbitration Association ("AAA").  The party must file the complaint **within the applicable statute of limitations period** and such complaint shall be limited to the cause(s) of action within the scope of the notice of the Covered Dispute provided in accordance of Section 13.2.  The arbitration agreement set forth in this Article shall be

governed by the Federal Arbitration Act (the "FAA") and the law of the state in which the Dispute arose, to the extent such state law is not inconsistent with the FAA.  This agreement to arbitrate applies with respect to all Covered Disputes, whether initiated by DISTRIBUTOR or COMPANY.

13.4    **TIME FAILURES CONSTITUTE WAIVER.  FAILURE BY EITHER PARTY TO PROVIDE TIMELY WRITTEN NOTICE OF ANY COVERED DISPUTE TO THE OTHER PARTY, OR TO TIMELY SUBMIT A COVERED DISPUTE TO ARBITRATION (collectively referred to as "TIME FAILURE") IS DEEMED TO BE A FULL AND COMPLETE WAIVER OF SUCH DISPUTE, AND ANY CLAIM OF LIABILITY, REMEDY OR DAMAGES IS FOREVER WAIVED BY THE COMPLAINING PARTY, REGARDLESS OF MERIT. Time Failure does not alter the applicability of the Mandatory Dispute Resolution Process to any Covered Dispute.  The determination of whether a Party timely provided written notice of any Covered Dispute, or timely submitted to arbitration, is the exclusive decision of the arbitrator.**

13.5    **BUSINESS JUDGMENT**.  The parties hereto agree, and any arbitrator or judge is affirmatively advised, that this Agreement reserves to COMPANY the right to take (or refrain from taking) certain actions in the exercise of its business judgment based on its good faith assessment of overall best interests of a distribution system throughout the U.S.  Where such discretion has been exercised in good faith, and is supported by the good faith reasonable business judgment of COMPANY, no arbitrator nor a judge shall substitute his or her judgment of what may be reasonable under the circumstances for the good faith reasonable business judgment exercised by COMPANY.  The parties agree that if COMPANY's judgment complies with the requirements of this Section, it shall not be replaced by the judgment of an arbitrator or judge even though other reasonable alternatives to COMPANY's reasonable business judgment may exist.

13.6    **COVERED DISPUTES**.  Except for the Excluded Disputes (defined below), Covered Disputes include any and all Disputes between DISTRIBUTOR and COMPANY, including claims arising out of or in any way relating to this Agreement and claims relating to any assertion of any employment relationship between DISTRIBUTOR (and/or its employees, contractors, owners or representatives) and COMPANY and/or its affiliates (each of which shall be deemed a third party beneficiary and may fully enforce the terms of this Article), including contract, tort, defamation and other common law claims, wage and hour and/or wage payment claims, unfair competition claims, statutory discrimination, harassment, and retaliation claims, and claims arising under or relating to any federal, state or local constitution, statute or regulation, now or hereafter recognized.

13.7    **EXCLUDED DISPUTES**.  The following Disputes are not subject to the Mandatory Dispute Resolution Process set forth in this Article: (i) claims relating to specific performance under this Agreement; (ii) claims or cross-claims relating to indemnification by non-parties to this Agreement or subrogation of claims by third parties to this Agreement (including claims by or against employees and/or contractors of DISTRIBUTOR); (iii) applications for temporary or preliminary injunctive relief in aid

of arbitration or for the maintenance of the status quo pending arbitration; (iv) claims related to use or misuse of trade names, trademarks, or intellectual property; (v) claims related to use or misuse of alleged Confidential Information, including confidential trade secrets and proprietary business information; (vi) any claim that is expressly precluded from arbitration under applicable law; and (vii) any claim that is already pending before an applicable court of law.  Nothing set forth herein waives DISTRIBUTOR's right to file a charge or complaint with or to cooperate with the U.S. Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board, the federal Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency charged with investigating and/or adjudicating complaint; however, any Covered Dispute that is not resolved through the federal, state or local administrative agency proceeding must be submitted to arbitration in accordance with this Article, except where expressly precluded by a federal statute or regulation.  DISTRIBUTOR has the right to challenge the validity of this Article on any grounds that may exist in law or equity, and COMPANY shall not engage in any retaliatory actions against DISTRIBUTOR in the event it chooses to challenge the validity of this Article.  However, COMPANY reserves the right to attempt to enforce this agreement in any appropriate forum.

13.8   **WAIVER**.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, DISTRIBUTOR AGREES ON ITS BEHALF AND ON BEHALF OF ITS OWNERS TO WAIVE ANY RIGHT TO:  (I) INITIATE OR MAINTAIN ANY COVERED DISPUTE ON A CLASS ACTION BASIS OR COLLECTIVE ACTION BASIS, EITHER IN COURT OR IN ARBITRATION, AGAINST  COMPANY AND/OR ANY OF ITS AFFILIATES OR RELATED COMPANIES (INCLUDING ITS AND THEIR OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS); (II) SERVE OR PARTICIPATE IN THE FUTURE AS A REPRESENTATIVE OF ANY SUCH CLASS ACTION OR COLLECTIVE ACTION; (III) SERVE OR PARTICIPATE IN THE FUTURE AS A MEMBER OF ANY SUCH CLASS ACTION OR COLLECTIVE ACTION; OR (IV) RECOVER ANY RELIEF FROM ANY SUCH CLASS ACTION OR COLLECTIVE ACTION.

DISTRIBUTOR further agrees that if it is included within any such class or collective action, it will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be.  The parties hereto further agree that this waiver shall also apply to any representative actions, except to the extent not permitted by applicable law.

DISTRIBUTOR further agrees that no arbitrator shall have authority to: (i) order, authorize, or permit any notice or information about an arbitration or any claims or defenses in an arbitration to be sent to any class or representative group of persons other than the parties to the individual arbitration, provided that any party or the arbitrator may compel testimony of a witness or the production of documents, material or information consistent with applicable arbitration rules; or (ii) order or require either party to produce any kind of contact information for any class or representative group of current or former distributors of COMPANY or its affiliates.  The arbitrator only has authority to allow a Covered Dispute to be decided in arbitration on an individual basis.

Any issue concerning the validity or enforceability of the waiver in this Article (including the prohibition against class, collective or representative action arbitration) shall be decided by a court of competent jurisdiction, and no arbitrator shall have any authority or consider or decide any issue concerning the validity or enforceability of the waiver. Any issue concerning arbitrability of a particular issue or claim pursuant to the arbitration agreement (except for those concerning the validity or enforceability of the waiver) must be resolved by the arbitrator, not the court.

13.9   **SELECTION AND RULES**.  Except as specified below, DISTRIBUTOR and COMPANY agree that any arbitration of a Covered Dispute will be resolved by final and binding arbitration conducted pursuant to the FAA and under the auspices of the AAA and its Commercial Arbitration Rules ("AAA Commercial Arbitration Rules" available at www.adr.org), or any successor rules, and shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing.  DISTRIBUTOR and COMPANY agree that the arbitration shall be held in or near the county in which DISTRIBUTOR operated under this Agreement, or in any other mutually agreed location.  To the extent any of the terms, conditions or requirements of this Article conflict with the AAA Commercial Arbitration Rules or other applicable rules, the terms, conditions and requirements of this Article shall govern.  Arbitrators are required to issue a written award and opinion, and their awards shall be final and binding, and any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction.  The arbitration shall be subject to the same burdens of proof and statutes of limitations as if the Covered Dispute was being heard in federal district court, and the parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine.  No arbitration award or decision will have any preclusive effect as to any issues or claims in any Dispute, arbitration, or court proceeding where any party was not a named party in the arbitration.

13.10  **REMEDIES**.  Subject to the parties' right to appeal or seek vacatur under applicable law, the parties acknowledge and agree that the decision of the arbitrator will be final and binding on the parties and that the arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Dispute had been filed in a court of competent jurisdiction, including actual and reasonable attorneys' fees and costs, if any.  The parties acknowledge and agree that as part of a party's costs, it may recover expert fees incurred to the same extent as it could in court.  DISTRIBUTOR acknowledges and agrees that, subject to any applicable fee-shifting provisions, it shall be responsible for the filing fee required to institute arbitration with the AAA up to the amount of the filing fee it would have incurred had it filed such Covered Dispute(s) in federal district court.  COMPANY shall be responsible for all additional arbitration filing fees, forum fees, and other fees and costs assessed by the AAA, subject to the arbitrator's exercise of its authority to award COMPANY costs and fees as the prevailing party or for other equitable reasons.  Unless the arbitrator decides otherwise, each party shall be responsible for its own attorneys' fees and costs.

13.11 **LIQUIDATED DAMAGES**.  The parties acknowledge and agree that if it is determined by a court of competent jurisdiction that the other party breached this Article by attempting to prosecute a Covered Dispute in a forum other than arbitration under this Article, then such breaching party  shall owe the other party liquidated damages in the amount of $10,000, which the parties agree is not intended as a penalty, but instead represents a good faith approximation of damages that may occur but be difficult to otherwise ascertain (inclusive of anticipated reputational harm).  These liquidated damages shall be in addition to any equitable or legal remedies for breach of this Article.

13.12 **SEVERABILITY.**  Without limiting any general severability provision of this Agreement, the Parties understand and agree that if a court or arbitrator invalidates or refuses to enforce any term or portion of this Article, the remainder of this Article shall not be affected by such invalidity or unenforceability but shall remain in full force and effect, except that if any portion of the class or collective action waiver is found invalid or unenforceable, in no event shall a court or arbitrator order arbitration on a class or collective basis.  Instead, if the class or collective action waiver is found unenforceable, the class or collective claim shall be litigated in Court.


Dated: _____          _____
                                                Print Name

                                                _____
                                                Signature

# EXHIBIT E

## <u>DECLARATION OF INDEPENDENT BUSINESS STATUS</u>

The following Declaration of Independent Business Status is made by

_____ in relation to his/her relationship with Bimbo Foods Bakeries

Distribution, LLC ("BFBD") and/or its parents, subsidiaries, affiliates or predecessors (the

"Company").  I state and declare the following:

1.      I acknowledge that I operate my own independent business and have a

relationship with the Company only as an independent contractor.

2.      I acknowledge that I am not an employee of the Company and any relationship I

have with the Company or duties performed pursuant to that relationship does not establish any

right to unemployment benefits or other benefits or any other right arising from an employment

relationship.

3.      I acknowledge that I am in a different line of business than the Company,

including Bimbo Bakeries USA, Inc. ("BBUSA") and BFBD. I acknowledge that BBUSA is a

manufacturer and so selling/distributing is just incidental to that fundamental business. I also

acknowledge that BFBD sells franchise rights and wholesale products to independent business

partners ("IBP"), whereas IBPs exclusively sell/distribute product to customers.

4.      I acknowledge that I operate my business as a recognized independent

trade/occupation and could take my know-how, vehicle(s), equipment, customer relationships,

and any workers and use them for a variety of other distribution businesses in the industry or

another industry.

5.      I am responsible for all tax liability associated with payments received from or

through the Company, and the Company properly does not withhold any taxes from payments to

me.

6.      I am responsible for obtaining and maintaining any required registration, licenses or other authorization necessary for my business.

7.      I further acknowledge that:

a.      I am not and should not be insured under the Company's health insurance coverage or workers' compensation insurance coverage.

b.      I decide the location from which to operate my business.

c.      I voluntarily purchased distribution rights and can buy more distribution rights or sell some or all of my rights at any time.

d.      My purchase of my distribution rights was a significant investment for my business and was made in an attempt to generate future profits for my business.

e.      Whether or not I make a profit from any relationship with the Company is determined by my individual efforts and skill to maximize sales and control my costs.

f.      I own the products I purchase from the Company and bear the risk of loss of, or damage to, those products.

g.      The vast majority of my time spent operating my business is spent at my chosen place of business, public roadways and the premises of my customers.

h.      The Company does not restrict my ability to perform services for or through other parties and I am authorized to accept work from and perform work for other businesses and individuals besides the Company that do not compete with the Company.

i.      The Company expects that I provide services for other parties, including through other businesses or side employment.

j.      I am not entirely economically dependent on any relationship with the Company given my skills and ability to pursue other businesses or employment.

k.      The Company does not dictate the performance, methods or process I use to operate my business.

l.      I have not been subject to any mandatory training by the Company.

m.      I have not been required to personally operate my business.

n.      I decide what to wear and whether to brand my vehicle(s) and can decide to enter into advertising agreements with the Company to receive compensation in exchange for wearing branded clothing and having branding on my vehicles.

o.      It is up to me to decide what is best for my business in contracting with the Company, including whether and how to interview, hire, train, supervise, evaluate, discipline and fire my own independent contractors or employees; compensate my independent contractors or employees; select vehicles to use; finance my business; solicit new customers; maintain good relationships with my existing customers; communicate with my customers about displays and promotions; obtain additional shelf space from my customers; rotate product and ensure an adequate supply of fresh products; remove less fresh product; minimize the need for returned products; and offer new products.

p.      I am responsible for managing my inventory and determining what to order based on my customers' needs and my personal experience/judgment.

q.      I decide when to take time off, take breaks and make stops for personal reasons.

r.      The Company is not providing me with any wages of any kind, including any regular salary or any minimum, regular payment.

s.      I am responsible for providing and maintaining all tools and equipment required for my business.

t.      I am responsible for all expenses incurred by me in operating my business and am not reimbursed by the Company.

8.      I acknowledge that the terms set forth in this declaration apply to me, my employees, and my independent contractors and that I will promptly inform the Company if I no longer believe any of these statements to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:                                          _____
                                                Signature


                                                _____
                                                Printed Name